# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. 3:24-sw-8
Information associated with Daniel Kidd, )
theangryspider01@gmail.com, )
that is stored at premises controlled by Nest Labs, Inc. )

JAN 22 2024
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein.

located in the ___Northern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2423(a) | Transportation of a minor with intent to engage in criminal sexual activity |
| 18 U.S.C. § 1591 | Sex trafficking of a minor |
| 18 U.S.C. § 2251(a) | Production of Child pornography |

The application is based on these facts:

See attached affidavit, incorporated herein.

☒ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Reviewed by AUSA/SAUSA:

Heather Mansfield
*Printed name and title*

Daniel Leary, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 01/22/2024

/s/ MRC
*Judge's signature*

City and state: Richmond, Virginia

Mark R. Colombell, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| IN RE SEARCH OF: | ) |
| | ) |
| Information Associated with Daniel Kidd, | ) |
| theangryspider01@gmail.com, | )  Case No. 3:24-sw- 8 |
| | ) |
| that is stored at premises controlled by | ) |
| Nest Labs, Inc. | ) |

FILED JAN 2 2 2024 CLERK, U.S. DISTRICT COURT RICHMOND, VA

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Daniel E. Leary, a Special Agent with Homeland Security Investigations, Department of Homeland Security, being first duly sworn, hereby depose and state as follows:

**Introduction and Agent Background**

1.  I make this affidavit in support of an application for a search warrant for information associated with Daniel Kidd, 730 Appomattox Trace Road, Powhatan, VA 23139, theangryspider01@gmail.com, that is stored at premises owned, maintained, controlled, or operated by Nest Labs, Inc., ("Nest") a home security products company owned by Google, LLC, and headquartered in Palo Alto, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A), to require Nest to disclose to the government records and other information in its possession, including video content, pertaining to Daniel Kidd, 730 Appomattox Trace Road, Powhatan, VA 23139, theangryspider01@gmail.com.

2.  Your affiant is a law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), that is an officer of the United States who is empowered by law to

conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I am a Special Agent with the Richmond, Virginia, office of the Department of Homeland Security (DHS) Immigration and Customs Enforcement (ICE) Homeland Security Investigations (HSI) and have been employed as a Special Agent since July 2003. I am currently a member of the Richmond Division Child Exploitation Task Force and have been since March 2018. I have participated in investigations involving sexual assaults, persons who produce, collect, and distribute child pornography, and the importation and distribution of materials relating to the sexual exploitation of children. I have received training in the areas of sexual assaults and child exploitation, and I have reviewed images and videos of child pornography in a wide variety of media forms, including computer media. I have also discussed and reviewed these materials with other law enforcement officers.

3. In the course of my employment as a sworn law enforcement officer, I have participated in the execution of search warrants resulting in the seizure of computers, magnetic storage media for computers, other electronic media, and other items evidencing violations of state and federal laws, including various sections of Title 18 of the United States Code, involving child exploitation offenses.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other sworn law enforcement officers, agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2423(a) (transportation of a minor with intent to engage in criminal sexual activity), 18 U.S.C. §1591 (sex trafficking of a

minor); and 18 U.S.C. § 2251(a) (production of child pornography) have been committed by Daniel Kidd and Rosalinda Rosas. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

6. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated."

## PROBABLE CAUSE

### Offense Under Investigation

7. In April 2022, a joint investigation initiated by the Powhatan County Sheriff's Office and HSI revealed that ROSALINDA DELGADO ROSAS ("ROSAS") and DANIEL WAYNE KIDD ("KIDD") were involved in the transportation of a 15-year-old child ("Minor Victim 1" or "MV1") from Michigan to Virginia and the subsequent repeated sexual abuse of MV1.

8. Specifically, on April 8, 2022, Powhatan County Sheriff's Office received a call from Laura Piechoksi, a nurse employed at Helen DeVos Children's Hospital in Grand Rapids Michigan. Nurse Piechoski reported the rape of a 15-year-old child that occurred in Powhatan County, Virgina on or about April 1, 2022, through on or about April 7, 2022.

9. Investigation verified that on April 1, 2022, ROSAS flew from Richmond, Virginia to Michigan to transport MV1 to Virginia for the week of April 1 through April 7. On April 8, 2022, ROSAS flew from Richmond, Virginia to Michigan to return MV1 to Michigan

3

(MV1's home state). On April 8, MV1 was picked up from the airport by her stepfather. ROSAS did not remain in Michigan and returned immediately to Virginia.

10. Upon entering her stepfather's car outside of the airport, MV1 began to cry, hugged her stepfather, and disclosed that KIDD had sexually abused her each night of her stay in Virginia. MV1 made disclosures to family and to law enforcement. MV1 disclosed that KIDD both vaginally and orally raped her. She also disclosed that ROSAS was present for the rapes and watched them. MV1 disclosed that the rapes occurred in the home of KIDD and ROSAS in Powhatan County, Virginia—specifically the bedroom of ROSAS and KIDD and occasionally beginning in the living room. MV1 also disclosed during her sexual assault examination that one evening in the middle of the night KIDD woke MV1 in the room she was sleeping in and began to molest her. MV1 stated that she observed cameras in the living room as well as other parts of the home, and was aware there was a camera in the room she was sleeping in. MV1 stated that the cameras in the house were connected to ROSAS' and KIDD's phones. MV1 stated that ROSAS bought her several expensive gifts including, Apple AirPods, an Apple Watch, and nice clothes to keep quiet.

11. On April 8, 2022, a sexual assault kit was conducted on MV1 at YWCA West Central in Grand Rapids, Michigan. Stephanie Solis, the Nurse Examiner Program Manager, reported that bruising was observed on MV1 on her groin area, right outer thigh, above her left knee, left thigh, and inner calf. She also reported that there MV1 suffered trauma to three areas on the right side of the vagina where circular red abrasions were observed. Solis identified abrasions on the inner wall of the vagina that were observed through the use of dye on MV1.

12. A child forensic interview was conducted on MV1. In the interview MV1 explained that while in transit to Virginia, but prior to arriving at ROSAS' and KIDD's residence

(the "Residence"), ROSAS began telling MV1 that KIDD was sexually interested in MV1 and that ROSAS wanted MV1 to tease KIDD to see how long it would take him to do something sexual to MV1. ROSAS also told MV1 that KIDD was going "spoil her."[1] The evening MV1 arrived at KIDD's Residence, MV1 showered and entered the living room where she laid on the couch and KIDD began to touch her under her clothes including her vaginal area. ROSAS was present and watched. MV1 was then taken into ROSAS and KIDD's bedroom where she undressed and KIDD and MV1 engaged in oral sex while ROSAS watched. Throughout the week KIDD engaged in oral and vaginal sex with MV1. ROSAS was often present and watched. She also instructed MV1 on how to perform oral sex on KIDD. At some point in the week, KIDD also choked and slapped MV1 while having sex with her.

13. ROSAS' minor son was also present in the Residence for the week of April 1 through April 8. At some point during the week, while at an amusement park MV1 disclosed to ROSAS' son that KIDD had been having sex with MV1 and ROSAS was aware of it.

14. On April 12, 2022, Powhatan County Sheriff's Office obtained a warrant to search ROSAS' and KIDD's Residence. The search warrant authorized the seizure of electronic devices. The following items were seized from the Residence on April 13, 2022:

    a. A silver Apple iPhone 6s Plus, FCC IDL: BCG-E2944A;

    b. A black Apple iPhone;

    c. A purple Apple iPhone;

    d. A red Apple iPhone; and

    e. A burned cell phone with charging cable, located in a firepit.

---

[1] Your Affiant understands this to mean that KIDD was going to purchase many things and experiences for MV1.

5

15. On April 13, 2022, law enforcement conducted a non-custodial interview of ROSAS' minor son. ROSAS' son confirmed that MV1 had visited and stayed in the Residence from April 1 through April 8. He also stated that during her visit, MV 1 disclosed to him, while at an amusement park, that KIDD was having sex with MV1. ROSAS' son also stated that after MV1 left Virgina he disclosed to his mom, ROSAS, that MV1 had told him that KIDD had sex with MV1 and ROSAS was aware of it.

16. On April 13, 2022, law enforcement conducted non-custodial interviews of KIDD and ROSAS. Both ROSAS and KIDD confirmed in their respective interviews that MV1 was present in the Residence from April 1 through April 8. They also confirmed that several gifts were given to MV1 including an Apple Watch, Apple AirPods, clothing from Target, trips to Kings Dominion, and several meals out. They also confirmed that MV1 stayed in the room on the first floor that KIDD's daughter uses when she stays at the Residence. Both confirmed cameras are in the room MV1 stayed in as well as the living room. KIDD confirmed that the camera system in the house including the cameras in the living room and the room MV1 stayed in are Google Nest. He also confirmed that the cameras sync to his phone and videos are retained for 60 days.

17. The phones seized and described in paragraph 14 are currently in the lawful possession of the United States. Pursuant to the state search warrants, the SUBJECT DEVICES were forensically imaged by state investigators and those images were reviewed by state and federal investigators.

18. Review of the forensic images revealed short video snippets captured by the Google Nest camera in the room in which MV1 stayed when she was in the residence with KIDD and ROSAS. These video snippets were found on the iPhone 13(IMEI:

353341832453253 from the week of April 1-8 when MV1 stayed in the residence with KIDD and ROSAS. On several of these videos, KIDD can be seen in the room with MV1. According to exif data, these videos were captured at late hours of the night and or early hours of the morning. In certain of the videos both KIDD and or MV1 are in various states of undress on or around the bed. Several of the videos feature KIDD in positions indicative of him engaging in sexual acts with MV1.

### Information about Nest

19. From my review of publicly available information provided by Nest about its services, including Nest's "Privacy Policy" and "Terms of Service," I am aware of the following about Nest and about the information collected and retained by Nest:

   a. Nest sells products and services designed to allow users to automate their home and "stay informed, feel more comfortable and safe, keep an eye on home when you're away, and connect to friends and family…"[2].

   b. Nest cameras are used to capture still images and video footage for a variety of purposes including home monitoring. They can be used as a sensor to detect things like motion, activity, people, or gestures. Nest cameras can also be used as a biometric sensor to identify a specific person. Users can use Nest cameras to see what's happening near the camera. The cameras can be used to detect certain types of activity providing users an alert when a person or motion is detected near the camera. Depending on the camera model, where the user lives, and whether or not the user has a Nest Aware subscription, the camera can

---

[2] https://store.google.com/us/category/google_nest?hl=en-US

7

  be used to identify a face if a user has told the camera to recognize it and send an alert when the camera recognizes someone the user knows or a stranger. [3]

c. Video history is Nest's cloud-based video recording and storage service. A Nest Cam automatically stores video securely to the cloud so a user can access it anytime.[4] Nest saves audio and video data from devices with cameras and microphones such as person, object, sound motion or activity detection information, subject to the user's permissions and settings. For example, Nest will store video footage if the user chooses to receive video storage services from Google for the Nest Cams. [5]

d. Certain Next Cams (wired and some battery) which also have the Nest Aware Plus subscription store up to 60 days of event video history and up to 10 days of 24/7 video history. [6] Clips are saved to the cloud when the Nest Cam detects motion or sound. [7]

e. All Google Nest cameras and doorbells can upload and securely save video in the cloud. Video storage to the cloud varies by model and subscription type. With an Event Video History subscription, a Nest camera only saves clips to the

---

[3] https://support.google.com/googlenest/answer/9330256?hl=en&ref_topic=7173611&sjid=6400089081867202644-NA

[4] https://support.google.com/googlenest/answer/9208447?hl=en&ref_topic=9305896

[5] https://support.google.com/googlenest/answer/9415830?hl=en&ref_topic=7173611#zippy=%2Cwhat-types-of-data-are-collected-when-i-use-google-nests-connected-home-devices-and-services%2Cwhat-retention-periods-apply-to-my-data%2Chow-can-i-delete-data-associated-with-my-use-of-nest-and-home-devices

[6] https://support.google.com/googlenest/answer/9681538

[7] https://support.google.com/googlenest/answer/9233159#zippy=%2Cbetter-alerts-for-motion-and-sound%2Cvideo-history-recording

8

cloud when it detects important sound or motion. With 24/7 Video History, a Nest camera saves all footage to the cloud anytime its connected to power and streaming video. Whether the Nest camera can record and save video with Event History or 24/7 History, and for how many days it saves video to the could depends on which Nest Camera or doorbell model the user has and whether the user has a Nest Aware subscription. [8]

f. When a user enables the recording or streaming features on a Nest Cam, Nest processes the video and audio signals and data from the device, subject to the user's instruction, configuration, and settings. This may include capturing and sending the user portions of this data by push notification or email or analyzing the data to identify motion, sound or other activity. When a Nest Cam is on, Nest processes the video and audio signals and data to identify activity.

g. Upon set up, a user may choose to receive mobile notifications, Nest may process information from the user's Nest Cam to send the user alerts when something happens. If a user enables the recording features, Nest will capture, process and retain video and audio recordings from the device for the duration of the recording subscription period (for example, 5, 10, 30, or 60 days), and the user will be able to access those recordings using Nest services during that time. [9]

---

[8] https://support.google.com/googlenest/answer/9242083

[9] https://support.google.com/googlenest/answer/9415830?hl=en&ref_topic=7173611#zippy=%2Cwhat-types-of-data-are-collected-when-i-use-google-nests-connected-home-devices-and-services%2Cwhat-retention-periods-apply-to-my-data%2Chow-can-i-delete-data-associated-with-my-use-of-nest-and-home-devices%2Cmore-about-data-from-your-devices-and-services

h. Users may save and choose to share certain content like video clips, live video streams, images, captions, and comments for other people to access using Google services.

i. Nest asks customers to provide personal information in connection with purchasing Nest's products and services. This may include: contact information, such as name, phone number, email, and postal address, and credit card information; account information, such as online password and other log-in details used to access Nest's products and services.

j. Nest also obtains product setup information, including Nest device name, device type, and information about the home, including ZIP code, and where the device is placed.

k. Nest also obtains technical data like device make and model, serial number, IP and MAC address, Wi-Fi connectivity, signal strength and settings, detection of other devices on the network and nearby access points, hardware and software version, sensor status, battery charge level, log files from connections, power status, and other technical information such as crash, diagnostics, reliability and performance logs and reports. [10]

l. Nest products also provide a feature called Home/Away Assist which uses input from activity sensors in Nest products and the user's phone's location to automatically switch the behavior of Nest products in the home for when the user leaves or comes back. There are two ways Home/Away Assist determines

---

[10] https://support.google.com/googlenest/answer/9415830?hl=en&ref_topic=7173611#zippy=%2Cwhat-types-of-data-are-collected-when-i-use-google-nests-connected-home-devices-and-services%2Cwhat-retention-periods-apply-to-my-data%2Chow-can-i-delete-data-associated-with-my-use-of-nest-and-home-devices

10

       whether to automatically switch to Home or Away: (i) the location of the user's phone, and (ii) whether Nest products (such as a Nest Cam) are currently noticing any activity in the home.[11]

    m. Home/Away Assist (if enabled) uses the phone's location through a combination of cellular and Wi-Fi data, and GPS from the user's phone to help determine when the user leaves or returns home. Nest does not continually record the user's phone's exact location. Instead, the app defines a large area around the home called a geofence that acts like a home zone. The Nest app receives notifications from the location services of the user's phone's operating system to determine whether the user has entered or left the home zone. The user's home presence history includes data for all members of the home and all devices, even the data the user cannot see in the home's history in the Home app. The data is stored for 60 days and then automatically deleted. [12]

20. On October 20, 2023, I served Nest with a preservation request pursuant to 18 U.S.C. § 2703(f), requiring Google to preserve all information associated with the SUBJECT ACCOUNT.

### Connection of Nest to the Investigation

21. Based on the information above, Nest's servers are likely to contain the types of material described above, including stored video and audio content and information concerning

---

[11] https://support.google.com/googlenest/answer/9257400?hl=en#zippy=%2Chow-homeaway-assist-works%2Chow-homeaway-assist-uses-phone-location

[12] https://support.google.com/googlenest/answer/10000312?sjid=4546960866012402757-NA#zippy=%2Cpresence-sensing-and-how-its-used-for-your-home-away-routines%2Cpresence-sensing-and-how-its-used-with-only-ring-when-home%2Chow-your-phones-location-works-with-your-presence-sensing%2Cmanage-your-data

the use of Nest products and services by Daniel Kidd, 730 Appomattox Trace Road, Powhatan, VA 23139, theangryspider01@gmail.com. In my training and experience, such information may constitute evidence of the crimes under investigation, including evidence of violations of 18 U.S.C. § 2423(a) (transportation of a minor with intent to engage in criminal sexual activity), 18 U.S.C. §1591 (sex trafficking of a minor); and 18 U.S.C. § 2251(a) (production of child pornography)

## Information To Be Searched And Things To Be Seized

22. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular Title 18, United States Code, Sections 2703(a), (b)(1)(A), and (c)(1)(A), by using the warrant to require Nest to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## Conclusion

23. Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence of violations of 18 U.S.C. § 2423(a) (transportation of a minor with intent to engage in criminal sexual activity), 18 U.S.C. §1591 (sex trafficking of a minor); and 18 U.S.C. § 2251(a) (production of child pornography) may be located in the information described in Attachment A.

24. Based on the forgoing, I request that the Court issue the proposed search warrant.

25. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant

by serving it on Nest. Because the warrant will be served on Nest, who will then compile the requested records at a time convenient to it, and then reviewed by government-authorized persons, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Daniel E. Leary
Special Agent
Homeland Security Investigations

SUBSCRIBED and SWORN to before me on January 22, 2024 at Richmond, Virginia.

/s/ MRC

The Honorable Mark R. Colombell
United States Magistrate Judge

13

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with Daniel Kidd, 730 Appomattox Trace Road, Powhatan, VA  23139, theangryspider01@gmail.com that is stored at premises owned, maintained, controlled, or operated by Nest Labs, Inc., a company that is owned by Google LLC and headquartered at 3500 Hillview Avenue, Palo Alto, CA  94304.

# ATTACHMENT B

## Particular Things to be Seized

**I.** **Information to be disclosed by Nest Labs, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Nest Labs, Inc., including videos, communications, records, files, logs, or information that have been deleted but are still available to Nest Labs, Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Nest Labs, Inc. is required to disclose the following information to the government:

  a. All video and audio content and all logs and records associated with the content for the account from March 1, 2022 to April 12, 2022, EST, including stored or preserved copies of such video and audio content;

  b. All location data associated with the particular device or devices used to login to or access the account, from March 1, 2022 to April 12, 2022 EST;

  c. All data and information that has been deleted by the user March 1, 2022 to April 12, 2022, EST ;

  d. All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), phone numbers, payment and billing information, including billing address and payment card details, and other personal identifiers;

  e. The dates and times at which the account and profile were created, the Internet Protocol ("IP") address at the time of sign-up, all activity logs including IP logs and other documents showing the IP address, date, and time of each login to the account, as well as any other log file information;

  f. All information regarding the particular device or devices used to login to or access the account, including all device identifier information or cookie information, including all information about the particular device or devices used to access the account and the date and time of those accesses;

  g. All privacy and account settings;

  h. All information about connections between the account and third-party websites and applications; and,

  i. All records pertaining to communications between Nest and any person regarding the user or the user's Nest account, including contacts with support services, and all records of actions taken, including suspensions of the account.

Nest is hereby ordered to disclose the above information to the government within **14 days** of issuance of this warrant.

II. **Information to be seized by the government**

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 2423(a) (transportation of a minor with intent to engage in criminal sexual activity), 18 U.S.C. §1591 (sex trafficking of a minor); and 18 U.S.C. § 2251(a) (production of child pornography), those violations involving KIDD and ROSAS from March 1, 2022 to April 12, 2022, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a. Evidence of the sexual exploitation of MV1;

b. Evidence of the production of child pornography;

c. Evidence indicating how and when the Nest account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Nest account owner;

d. Evidence indicating the Nest account owner's state of mind as it relates to the crime under investigation.

e. The identity of the person(s) who created or used the Nest account, including records that help reveal the whereabouts of such person(s).

2